IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PATRICIA DAIC, | ) | CIVIL NO.  05-00202 JMS/LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| METROPOLITAN LIFE | ) | SUMMARY JUDGMENT AND |
| INSURANCE COMPANY and | ) | DENYING PLAINTIFF'S MOTION |
| HAWAII PACIFIC HEALTH GROUP | ) | FOR SUMMARY JUDGMENT |
| PLAN FOR EMPLOYEES OF | ) | |
| HAWAII PACIFIC HEALTH, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I. <u>INTRODUCTION</u>

Plaintiff Patricia Daic worked for Hawaii Pacific Health ("HPH")

from 1984 until July 2003.  During this time, HPH provided the Plaintiff with

health insurance and Long Term Disability ("LTD") insurance; this insurance was

underwritten by Metropolitan Life Insurance Company ("MetLife").  The Plaintiff

argues that MetLife improperly denied her LTD benefits.

The Plaintiff suffers from a number of physical and mental

impairments, and in December 2003, she applied for LTD benefits.  MetLife

denied that request.  The Plaintiff went through an appeal process with MetLife.

MetLife again denied the request for benefits, and the Plaintiff filed the instant

lawsuit against MetLife and the Hawaii Pacific Health Welfare Benefit Plan ("the

HPH Plan").  The Plaintiff and the Defendants have moved for summary judgment.

      The main point of contention is the standard of review that the court

should apply in reviewing MetLife's determination:  the Plaintiff argues that the de

novo standard should apply, whereas the Defendants contend that the abuse of

discretion standard applies (although both parties argue that they should prevail

regardless of the applicable standard of review).

      As discussed below, the court concludes that the proper standard of

review is abuse of discretion.  In reviewing MetLife's determination for an abuse

of discretion, the court finds that there is conflicting medical evidence and that

MetLife did not abuse its discretion in denying the Plaintiff's request for LTD

benefits.  Consequently, the court GRANTS the Defendants' Motion for Summary

Judgment and DENIES the Plaintiff's Motion for Summary Judgment.

## II.  BACKGROUND

A.  Medical Background

      The Plaintiff claims that she suffers (or has suffered) from a number

of ailments, including the following:  Systemic Lupus Erythematosus ("SLE"),

Sjögren's Syndrome, acid reflux disease, degenerative disc disease, cervical radiculopathy, arthritis, fibromyalgia, trochanterichorsitis, recurrent right hand/arm and left hip difficulties, Generalized Anxiety Disorder, and Depressive Disorder. Plaintiff's First Amended Complaint ("Complaint") at ¶¶ 9-10; Administrative Record ("AR") 25.  She also claims to suffer from severe fatigue, malaise, muscle weakness, lymph node enlargement, poor sleep, and Raynaud's phenomenon as a result of her combined physical impairments.  Complaint at ¶ 9.  She also alleges that she experiences symptoms of low energy, difficulty in concentration, and problems with decision-making as a result of her psychiatric ailments.  Complaint at ¶ 10.

The Plaintiff was diagnosed with SLE in 1993 by Erlaine Bello, M.D.[1] AR 230.  In 1997, the Plaintiff consulted with rheumatologist Jeffrey S. Fong, M.D., for SLE and chronic fatigue; Dr. Fong recommended to HPH that the Plaintiff be allowed to work flexible hours.  AR 457.  The Plaintiff decreased her work schedule from thirty-six hours a week over four days to thirty hours a week over three days.  Plaintiff's Concise Statement of Facts in Support of Motion for Summary Judgment ("Plaintiff's Concise"), Ex. 2 at 335.  In 2002, Dr. Fong wrote

---

[1] In her review of Plaintiff's medical history, MetLife's independent physician consultant, Tracey Schmidt, M.D., stated that Plaintiff "appears to have met the American College of Rheumatology's criteria" for SLE.  AR 15.

that the flexibility of the Plaintiff's three-day work week schedule had allowed the Plaintiff to "minimize her flares and absenteeism by giving her the freedom to work around them."  AR 460.  He also stated that the "flexibility to allow for adequate rest is important for SLE" because the disorder has the tendency to "fluctuate [unpredictably]."[2]  AR 460.

In August 2002, the Plaintiff began seeing rheumatologist Kristine Uramoto, M.D., for her SLE, Sjogren's syndrome, and Raynaud's phenomenon. AR 362.  On March 5, 2003, Dr. Uramoto noted that:  (1) Plaintiff's cervical radiculopathy was "much improved"; (2) Plaintiff's SLE appeared "clinically stable"; and (3) the Plaintiff had "[s]econdary fibromyalgia with difficulty sleeping."  AR 350.  Dr. Uramoto also wrote that the Plaintiff "has resumed her usual work schedule and has been able to tolerate it however she did work one extra day last week and did not do well."  AR 350.  On April 4, 2003, Dr. Uramoto's clinical notes reflect that the Plaintiff "has been quite ill since last seen. She had a bad case of laryngitis and previously gastroenteritis."  AR 347.  On April 30, 2003, however, Dr. Uramoto wrote that the Plaintiff's "present schedule of working Monday, Tuesday and Thursday is currently manageable" but that if the

---

[2] This letter is addressed to HPH, but it is unclear whether this letter was ever sent:  there is a handwritten note on the letter that states, "6/5/03 We never sent this letter[.]"  Plaintiff's Concise, Ex. 2 at 55.

Plaintiff is required to work on a Saturday the Plaintiff should not work on the preceding Thursday.  AR 346.

On July 30, 2003, Dr. Uramoto noted that Plaintiff was on medical leave due to "an increase in stress at work."  AR 342.  She wrote that, "[d]uring the past month or so, [the Plaintiff] has had an increase in pain in her lower back as well as her left lower extremity," most likely due to "degenerative disc disease . . . , possible mild radiculopathy, and possible early osteoarthritis of the left knee."  AR 342.  On July 31, 2003, Dr. Uramoto wrote a letter stating that:  (1) the Plaintiff's "cervical radiculopathy symptoms" had resolved; (2) the Plaintiff's SLE symptoms were "very mild" and "thus far has been controlled without any medications"; (3) the Plaintiff had possible fibromyalgia, but that the Plaintiff "has been fully employed and her fibromyalgia appears to be quite mild"; and (4) the Plaintiff was "overall in good health despite her underlying problems."  AR 341.

The Plaintiff has also been seeking treatment from psychiatrist Marie deVegvar, M.D., since 1998.  AR 262.  Dr. deVegvar diagnosed the Plaintiff as having Generalized Anxiety Disorder, Depressive Disorder, Obsessive-Compulsive Traits, SLE, and Sjögren's Syndrome, among other things.  AR 262.  Dr. deVegvar's treatment notes show that, months before her last day of work in 2003, Plaintiff contemplated leaving her current job to take time off, after which she

5

would find another job.  AR 268.  In September 2003, Dr. deVegvar noted that

Plaintiff was working on her resume, looking into learning Excel, and thinking

about doing "temp" work.  AR 269.  Dr. deVegvar also observed during that visit

that the Plaintiff seemed "anxious" and "obsessive," and was still experiencing "a

lot of fatigue." AR 269.  On October 3, 2003, Dr. deVegvar wrote that Plaintiff

was "anxious" but "looking on-line at careers."  AR 270.  Furthermore, in an

Attending Physician Statement dated January 7, 2004, Dr. deVegvar stated that she

had advised Plaintiff to return to work part-time at either her "regular occupation"

or "any other occupation" beginning on April 5, 2004; Dr. DeVegvar also stated

that the Plaintiff "[m]ay not return to present position because [it would be] too

stressful." AR 38.  The Plaintiff was admitted to a mental health hospital from

June 17 to 20, 2004.  AR 12.

B.    Employment Background and Request for LTD Benefits

         In 2003, the Plaintiff was employed by HPH as an audiologist.  Her

responsibilities included setting up tests, obtaining case histories, evaluating

patients, developing aural habilitation therapy, and writing reports.  Plaintiff's

Concise, Ex. 3.  Her last day of work was on July 7, 2003.  On September 11,

2003, Plaintiff submitted a claim for temporary disability insurance benefits.[3]  AR

2, 425.  On the benefits request form, Dr. deVegvar (the Plaintiff's treating

psychiatrist) wrote that the Plaintiff had Generalized Anxiety Disorder and

estimated that the Plaintiff would be able to return to her "usual work" on October

27, 2003.  AR 2.

On December 19, 2003, the Plaintiff filed a claim for Long Term

Disability ("LTD") benefits under her insurance policy (the HPH Plan).  AR 23-26.

On the benefits request form, Plaintiff stated that she could not perform her job

duties because of fatigue, low energy, anxiety, SLE, fibromyalgia, arthritis,

Sjogren's Syndrome, and a history of cervical radiculopathy, among other things.

AR 25.

A MetLife "Disability Case Manager" reviewed the Plaintiff's

medical records and, on March 1, 2004, denied the Plaintiff's claim for LTD

benefits.  AR 18-19.  The Plaintiff appealed the decision on September 1, 2004,

citing and submitting additional evidence and argument.  MetLife denied the

appeal on October 24, 2004.  AR 6.

---

[3] At the August 4, 2006 hearing, counsel for both parties indicated that they were not certain as to whether this request was granted; the record suggests that the request was granted, although this is not entirely clear.

MetLife had two physician consultants review the Plaintiff's medical records after the Plaintiff's September 1, 2004 appeal.  On October 18, 2004, Leonard Kessler, M.D. reviewed the records with respect to the Plaintiff's mental health issues, and on October 21, 2004, Tracey Schmidt, M.D. reviewed the records with respect to the Plaintiff's physical impairments.  AR 3-5, 10-17. Although Dr. Kessler and Dr. Schmidt examined the Plaintiff's medical records, they did not examine the Plaintiff herself.  In her report to MetLife, Dr. Schmidt concluded that Plaintiff's medical records did not support a finding that Plaintiff's medical condition rendered her unable to do her job.  Dr. Kessler's report concluded that there was "no clear evidence of cognitive impairments nor functional limitations which have been solely a product of psychiatric illness, from July 2003 to the present time."  AR 4, 15-16.

The Plaintiff also applied for Social Security Disability Insurance ("SSDI") benefits, and on April 28, 2004, the Social Security Administration ("SSA") found that the Plaintiff "is not psychologically capable of working and is therefore found to be disabled."[4]  Plaintiff's Concise, Ex. 1 at 304.  Consequently, the Plaintiff was entitled to SSDI benefits.  The Social Security Disability

---

[4] The SSDI benefit payments statute defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

Examiner seems to have relied solely on the Plaintiff's mental health issues, rather than on the Plaintiff's other medical issues, in concluding that the Plaintiff was entitled to benefits.  Plaintiff's Concise, Ex. 1.

On March 22, 2005, Plaintiff filed the instant suit, seeking to recover LTD benefits under the Plan.  The Plaintiff and the Defendants filed motions for summary judgment on May 17, 2006, and the court heard arguments on the motions on August 4, 2006.

## III.  <u>STANDARDS OF REVIEW</u>

A.   <u>Review of MetLife's Denial of Benefits</u>

The focus of the parties' briefs is on the appropriate standard of review to apply to MetLife's decision to deny the Plaintiff's request for LTD benefits.  The Defendants argue that MetLife's denial of LTD benefits should be reviewed for an abuse of discretion, whereas the Plaintiff contends that the court should review the denial of benefits de novo.  The court agrees with the Defendants and concludes that the denial of benefits will be reviewed for an abuse of discretion.

The Supreme Court has explained that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority

9

to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  In other words, ERISA provides that the de novo standard of review is the default, but it allows benefit plans to incorporate an abuse of discretion standard (so long as the benefit plan clearly states that the administrator or fiduciary of the plan has discretion to interpret the plan).

The HPH Plan gives MetLife (the administrator) discretionary authority to determine eligibility for benefits and to construe the terms of the Plan. Pages 469 to 536 of the Administrative Record constitute the "Employee Benefit Plan" for Hawaii Pacific Health; page iii of this document, captioned "CERTIFICATE OF INSURANCE," provides in relevant part:

> MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract.  This includes the Group Policy, Certificate and any Amendments.

AR 472.  Considerably later in the document, the following language appears:

> **Discretionary Authority of Plan Administrator and Other Plan Fiduciaries**
>
> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.  Any interpretation or determination made pursuant to such discretionary authority

> shall be given full force and effect, unless it can be shown that
> the interpretation or determination was arbitrary and capricious.

AR 533.  These clauses, taken together, unambiguously confer discretion on

MetLife to interpret the Plan and make benefit determinations.  *Jordan v. Northrop*

*Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004) ("The

plan in this case contains the sentence, '[t]he Travelers has the discretion to

construe and interpret the terms of the Plan and the authority and responsibility to

make factual determinations. . . .' That language unambiguously confers discretion

on the administrator.  We therefore review the administrator's decision only for

abuse of discretion, not de novo." (Alterations in original.)).  Therefore, the abuse

of discretion standard of review applies.

     The Plaintiff presents five arguments as to why the de novo standard

of review should apply.  First, the Plaintiff argues that the policy language does not

clearly give MetLife discretion to make eligibility determinations.  As just

discussed, this argument is without merit.  Second, the Plaintiff argues that,

because the language conferring discretion on MetLife ("MetLife in its discretion

has authority to interpret the terms, conditions, and provisions of the entire

contract") appears in the Certificate of Insurance, rather than in the HPH Plan

itself, the court should disregard this language in determining whether MetLife has

discretion.  This argument is also without merit.  The Plaintiff was provided with

11

one "Plan Booklet."  All of the plan language quoted *supra* comes from the Plan

Booklet.  Some of the language appears in the section captioned "CERTIFICATE

OF INSURANCE," while some of the language appears in a section captioned

"ERISA INFORMATION."  The Plaintiff has cited no statute or caselaw that

requires particular language to be in a particular place in the ERISA plan.[5]  There is

nothing in the Plan Booklet that contradicts or calls into question the unambiguous

language conferring discretion on MetLife.  Thus, the Plaintiff's second argument

is without merit.

The Plaintiff's third argument is that MetLife's decision is not entitled

to deference because the abuse of discretion standard only applies where "a named

fiduciary properly designates another fiduciary, delegating its discretionary

authority."  Plaintiff's Opposition to Defendants' Motion for Summary Judgment

at 3.  The Plaintiff relies upon 29 U.S.C. § 1105(c)(1) and *Madden v. ITT Long*

*Term Disability Plan for Salaried Employees*, 914 F.2d 1279 (9th Cir. 1990), for

the proposition that, because MetLife did not delegate its discretionary authority,

---

[5] The Plaintiff cites *Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.*, 293
F.3d 1139, 1143 (9th Cir. 2002), for the proposition that the "plan master document" controls
over any other document provided to the employee.  *Bergt*, however, holds that where there is a
*conflict* between language appearing in the "plan master document" and language appearing in
the "summary plan document" (the employer's summary of benefits), the employee-friendly
language appearing in the plan master document controls.  This holding simply does not apply to
the instant case, where there is no conflict between any plan documents and where all the
relevant language appears in one comprehensive "Plan Booklet."

the de novo standard of review applies.  This argument is wholly without merit.

*Madden* and 29 U.S.C. § 1105(c)(1) deal with situations in which a plan fiduciary delegates its discretionary authority to a designated entity to carry out fiduciary responsibilities; *Madden* holds that the designated entity with discretionary authority may invoke the abuse of discretion standard so long as the plan itself provides the fiduciary with discretionary authority to determine eligibility and names the designated entity as a plan fiduciary.  In other words, if MetLife wishes to delegate its decision-making authority to another entity, it may do so, but MetLife would not be shielded by the abuse of discretion standard unless the designated entity is named in the plan itself.  In the instant case, MetLife did not delegate its fiduciary responsibilities to anyone, and *Madden* simply has no bearing on this case whatsoever.

The Plaintiff's fourth argument is that MetLife has an inherent conflict of interest as the underwriter and the plan administrator, such that deference to MetLife's determination is not entitled to deference.  The court disagrees.  The Ninth Circuit recently clarified the standard for determining whether a plan administrator's conflict of interest entitles a claimant to de novo review.  In *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955, 968-69 (9th Cir. 2006) (en banc), the court adopted a "careful, case-by-case approach" in

13

applying the abuse of discretion standard; the court held a plan administrator's

conflict of interest is one factor to be considered in determining whether the

administrator abused its discretion.  As the court explained:

> A straightforward abuse of discretion analysis allows a
> court to tailor its review to all the circumstances before it.  The
> level of skepticism with which a court views a conflicted
> administrator's decision may be low if a structural conflict of
> interest is unaccompanied, for example, by any evidence of
> malice, of self-dealing, or of a parsimonious claims-granting
> history.  A court may weigh a conflict more heavily if, for
> example, the administrator provides inconsistent reasons for
> denial; fails adequately to investigate a claim or ask the plaintiff
> for necessary evidence; fails to credit a claimant's reliable
> evidence; or has repeatedly denied benefits to deserving
> participants by interpreting plan terms incorrectly or by making
> decisions against the weight of evidence in the record.

*Id.* (citations omitted).  Thus, even if there is a conflict of interest in this case, that

conflict does not negate the policy language conferring abuse of discretion review;

instead, that conflict is a factor to be considered in applying the abuse of discretion

standard.  The court addresses the alleged conflict *infra*.

The Plaintiff's final argument is that the de novo standard should

apply because the "discretionary clause" (the language giving MetLife discretion to

make eligibility determinations, thus requiring the abuse of discretion standard

rather than allowing de novo review) violates Hawaii law.  The Plaintiff points to a

memorandum, dated December 8, 2004, from J.P. Schmidt (Insurance

Commissioner for the State of Hawaii) to all insurance companies offering health insurance in Hawaii.  This memorandum, entitled "Memorandum 2004-13H," states in relevant part:  "A 'discretionary clause' granting to a plan administrator discretionary authority so as to deprive the insured of a *de novo* appeal is an unfair or deceptive act or practice in the business of insurance and may not be used in health insurance contracts or plans in Hawaii."  Plaintiff's Concise, Ex. 14 at 3. The Insurance Commissioner explained that the discretionary clause violated Hawaii Revised Statutes ("HRS") § 431:13-102[6] because it violated the insurer's duty of good faith and fair dealing and the "insurer's fiduciary duty to act solely in the interests of its insureds who are plan participants and beneficiaries"; the discretionary clause also "may mislead the members to believe that they have no recourse to contest an insurer's plan interpretations[.]"  Plaintiff's Concise, Ex. 14 at 5.

Memorandum 2004-13H, by itself, appears to have no legal effect on MetLife.  There is no indication that this Memorandum, or its contents, was passed as an administrative rule or that MetLife's ability to act as an insurer in the State of Hawaii was conditioned on compliance with Memorandum 2004-13H itself.

---

[6] HRS § 431:13-102, entitled "Unfair methods of competition; unfair or deceptive acts or practices prohibited," provides:  "No person shall engage in this State in any trade practice which is defined in this article as, or determined pursuant to section 431:13-106 to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."

Furthermore, there is no indication that Memorandum 2004-13H -- issued in December 2004 -- was intended to be applied retroactively to insurers such as MetLife.  Therefore, the court agrees with the Defendants to the extent they argue that Memorandum 2004-13H, by itself, does not invalidate the discretionary clause contained within the HPH Plan.

The *raison d'etre* of Memorandum 2004-13H is not to implement a *new* rule; instead, the Memorandum was issued as an *interpretation* of an existing statute, HRS § 431:13-102.  Thus, the issue is not whether Memorandum 2004-13H invalidates the discretionary clause within the HPH benefit plan; instead, the issue is whether the clause is void pursuant to HRS § 431:13-102.

Even if the Plaintiff is correct that the HPH benefit plan language conferring discretion on MetLife violates Hawaii law, this court cannot strike the language from the plan.  HRS § 431:13-107 states that "[a]ll remedies, penalties and proceedings set forth in this article are to be invoked solely and exclusively by the commissioner."  In other words, there is no private cause of action for a violation of HRS § 431:13-102.[7]  For the court to apply the de novo standard of review, the court would have to declare that the plan language violates HRS

---

[7] The court does not opine as to whether the Plaintiff could bring a claim for unfair and deceptive trade practices pursuant to HRS chapter 480, however.

16

§ 431:13-102.  Had the Plaintiff brought a declaratory judgment action to achieve this result, the Plaintiff's complaint would have been dismissed pursuant to the plain language of HRS § 431:13-107.  The court sees no reason to allow the Plaintiff to circumvent HRS § 431:13-107 through an appeal from MetLife's denial of benefits.  Consequently, the court cannot rely upon the Insurance Commissioner's Memorandum as the reason to apply the de novo standard of review.  *See Firestone v. Acuson Corp. Long Term Disability Plan*, 326 F. Supp. 2d 1040, 1051 (N.D. Cal. 2004) ("[T]he [California Insurance Commissioner's] opinion letter does not serve as a basis for defeating defendant's motion for partial summary judgment or subjecting defendant's termination decision to *de novo* review.").  Although the Insurance Commissioner appears to believe that MetLife's conduct was unfair and deceptive, neither the Memorandum nor HRS § 431:13-102 allows the Plaintiff to invalidate the unlawful policy language.  The abuse of discretion standard applies.[8]

B.     Summary Judgment

        "Where the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal

---

[8] As a result, the court will not consider new evidence.  *Abatie*, 458 F.3d at 969 ("[C]onsideration of new evidence is permitted only in conjunction with de novo review of a denial of benefits.").

question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

## IV. ANALYSIS

There is conflicting medical evidence in this case.  Although Dr. deVengar found in April 2004 that the Plaintiff was not capable of maintaining regular job attendance and persisting at simple, repetitive work tasks on a consistent basis, Dr. Kessler concluded that "[t]reatment is seen to be very limited, incomplete, and inconsistent with the presence of a severe psychological disorder." AR 4; Plantiff's Concise, Ex. 5 at 3.  As to the Plaintiff's medical impairments, the Plaintiff's own physician, Dr. Uramoto, wrote in July 2003 that the Plaintiff was "overall in good health despite her underlying problems."  AR 341.  And although the Plaintiff was awarded SSDI benefits, this factor is not controlling in determining whether the Plaintiff is "disabled" within the meaning of the HPH Plan.[9]

---

[9] The standards for obtaining SSDI benefits and LTD benefits are slightly different.  As the Supreme Court explained in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003):

> Under a rule adopted by the Commissioner of Social Security, in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating

(continued...)

The Plaintiff argues that MetLife's decision should be viewed with
greater skepticism because of MetLife's inherent conflict of interest.  Specifically,
the Plaintiff points to MetLife's decision that the Plaintiff was not disabled -- when
(according to the Plaintiff) there is no objective medical evidence to support this
conclusion -- as irrational.  She also alleges that no physician even reviewed her
claim file until after MetLife first denied her claim for benefits on March 1, 2004,
suggesting that MetLife was acting out of pure self interest when it denied her
claim.

The court agrees that *some* skepticism is warranted in this case:  there
is an inherent structural conflict of interest, and none of MetLife's physicians
actually examined the Plaintiff.  Nevertheless, there is no "evidence of malice, of
self-dealing, or of a parsimonious claims-granting history."  *Abatie*, 458 F.3d at
968.  Although MetLife could have done a more thorough investigation, it did have

---

[9](...continued)
> physician.  See 20 CFR §§ 404.1527(d)(2), 416.927(d)(2) (2002).  This
> case presents the question whether a similar "treating physician rule"
> applies to disability determinations under employee benefits plans covered
> by the Employee Retirement Income Security Act of 1974 (ERISA or
> Act), 88 Stat. 832, as amended, 29 U.S.C. § 1001 *et seq*.  We hold that
> plan administrators are not obliged to accord special deference to the
> opinions of treating physicians.

Therefore, the fact that the Plaintiff was awarded SSDI benefits does not necessarily mean that
the Plaintiff is entitled to LTD benefits under the HPH Plan, inasmuch as MetLife was not
required to give any deference to the opinions of the Plaintiff's treating physicians.

two physicians review the Plaintiff's claim, including the medical history provided by the Plaintiff.  Looking at their reports, these doctors appear to have reviewed the evidence in the case (including the Plaintiff's reliable evidence).  AR 3-5, 10-17.  Therefore, though *some* skepticism is justified in this case, the level of skepticism warranted is not terribly high.

Even viewing the evidence with some low level of skepticism, however, MetLife did not abuse its discretion.  Although there is evidence to support the Plaintiff's position, there is sufficient evidence to support MetLife's determination that the Plaintiff did not have a "disability" (based either on her physical or mental impairments).  As a result, MetLife did not abuse its discretion in denying the Plaintiff benefits.  *See Bendixen*, 185 F.3d at 944 ("Although there may be contradictory evidence in the record, we hold that, as a matter of law, the plan administrator did not abuse its discretion by concluding that [the plaintiff] was not disabled by her mental illness[.]").

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS the Defendants' Motion for Summary Judgment and DENIES the Plaintiff's Motion for Summary Judgment.  As this Order disposes of all outstanding matters in this case, the clerk

of the court is instructed to enter judgment in favor of the Defendants and close the

case file.

IT IS SO ORDERED.

DATED at Honolulu, Hawaii, October 6, 2006.



J. Michael Seabright
United States District Judge

*Daic v. Metropolitan Life Insurance Company et al.*, Civ. No. 05-00202 JMS/LEK, Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment